# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### SOUTHEASTERN DIVISION

| | |
|---|---|
| **CONNI C. HARBISON and**<br>**ERIN M. CONVY, individually and on**<br>**behalf of all those similarly situated** ) ) ) ) | |
| **Plaintiffs,** ) ) | |
| **vs.** ) ) | **Case No. 4:12-cv-2180 SNLJ** |
| **LITOW & PECH, P.C., et al.** ) ) | |
| **Defendants.** ) | |

### MEMORANDUM AND ORDER

Plaintiff Conni Harbison filed her petition in the Circuit Court of St. Charles County,

Missouri on October 3, 2012.  Plaintiff Harbison brought individual and class claims for

violations of the Fair Debt Collection Practices Act, 15 U.S.C. 1692 *et seq.* ("FDCPA"), against

defendants Litow & Pech, P.C. (Count I) and Elliott Holdings, Inc., d/b/a Hatfield Process

Service (Count II).  Defendants removed the action to this court and filed a motion to dismiss

(#4).  Plaintiff responded by filing an amended complaint, which added plaintiff Erin Convy to

plaintiff's original claims and adds a Count III, which brings claims against Hatfield for

violations of Chapter 486 of the Missouri Revised Statutes, which relates to Notaries Public.

Defendants subsequently filed a second motion to dismiss (#17).  That second motion to dismiss

has been fully briefed and is now ripe for adjudication.[1]

## I.    Background

For purposes of the motion to dismiss, the Court accepts as true plaintiffs' allegations.

---

[1]Defendants explain that their second motion to dismiss pertains to the Amended
Complaint.  Because the Amended Complaint replaced the plaintiff's first-filed complaint, the
Court will deny defendants' first motion to dismiss (#4) as moot.

### A.    Facts as to Plaintiff Conni Harbison

On May 16, 2012, the law firm Litow & Pech filed a lawsuit on behalf of Capital One Bank USA NA against Harbison in the Associate Circuit Court of St. Louis County, in an attempt to collect a consumer debt.  On July 26, Litow & Pech moved to appoint Hatfield as special process server for the purpose of serving an alias summons on Harbison.  Hatfield was so appointed on July 27.  On August 17, Christopher D. Conder, a Hatfield employee or agent, purportedly signed the return copy of the alias summons, asserting that he personally served Harbison with a summons on August 16, 2012, at 6:15 p.m.  The return copy of the alias summons bears Conder's signature as well as a purported notarization by Lorri Lane, a notary public in Cass County, Missouri.  Lorri Lane is alleged to be a Hatfield employee who at all times has worked at the Hatfield corporate office in Kansas City, Missouri.  Plaintiff alleges that Lane did not actually sign the notary public signature line, but rather that a stamp of Lane's signature was affixed to the return copy of the summons.  Plaintiff further alleges that someone other than Lane herself affixed the stamped signature and notary seal to the return copy, and that Lane did not witness and was not physically present when Conder signed the return copy.

 Harbison alleges, also, that Conder did not actually serve her with the alias summons because she did not live at the address provided on the return copy of the summons.

 Litow & Pech filed a return copy of the summons with the state court on August 22 with the intent that the court assert personal jurisdiction over Harbison.  On August 29, a Litow & Pech attorney appeared in state court and stated that personal jurisdiction existed and that the attorney was prepared to take a default judgment against Harbison.  Somehow (the complaint does not specify how), the state court was alerted to the false and defective return copy of the

alias summons, thus the state court did not permit Litow & Pech to take a default judgment against Harbison.

Next, on August 31, Litow & Pech filed an "Amended Affidavit of Non-Service" prepared by Hatfield. The Amended Affidavit says that the process server left the documents at the door and because he later found out that the person at the residence who he saw was not Conni Harbison, he "non-served" the paperwork. Plaintiff alleges that the "Christopher D. Conder" who signed that document is not the same person who signed as "Christopher D. Conder" on the return copy of the summons.

Plaintiff Harbison alleges that she suffered damages as a result of the defendants' actions described above.

### B.    Facts as to Plaintiff Erin Convy

On June 29, 2012, Litow & Pech filed a lawsuit on behalf of Capital One Bank USA NA against Convy (then known as Erin Kresko) in the Associate Circuit Court of St. Charles County, in an attempt to collect a consumer debt. On that same day, Litow & Pech moved to appoint Hatfield as special process server for the purpose of serving an alias summons on Convy. Hatfield was so appointed on July 3. On August 14, Hatfield employee/agent James Donahue purportedly signed the return copy of the summons, asserting that he served a "co-resident" of Convy with a summons at a St. Charles address on August 13, 2012 at 7:16 p.m. Plaintiff alleges that the summons (which was forty days old) was expired and thus could not be lawfully used to effect personal service on Convy.

Similarly to the return copy filed in plaintiff Harbison's case, the return copy of the alias summons bears the server's (Donahue's) purported signature as well as a purported notarization by Lorri Lane, a notary public in Cass County, Missouri. Lorri Lane is alleged to be a Hatfield

employee who at all times has worked at the Hatfield corporate office in Kansas City, Missouri. Plaintiff again alleges that Lane did not actually sign the notary public signature line, but rather that a stamp of Lane's signature was affixed to the return copy of the summons. Plaintiff further alleges that someone other than Lane herself affixed the stamped signature and notary seal to the return copy, and that Lane did not witness and was not physically present when Donahue signed the return copy. Plaintiff also alleges that the return copy of the summons did not contain the original signature of Donahue.

On August 17, Litow & Pech filed the false and defective return copy of the summons with the intent that the state court exercise personal jurisdiction over Convy. On August 24, a Litow & Pech attorney appeared in court and represented that personal jurisdiction existed over Convy and requested a default judgment. The Court entered a default judgment in the amount of $1,377.17. Plaintiff Convy alleges that she suffered damages, including attorneys' fees, as a result of the defendants' actions described above.

### C.    Plaintiffs' claims

Plaintiffs' amended complaint observes that the FDCPA prohibits using any deceptive representative to collect a debt, 15 U.S.C. § 1692d, as well as any unfair or unconscionable means to collect a debt, *id.* § 1692f. Plaintiffs claim that Litow & Pech violated those provisions by using a false and defective service return affidavits in Missouri courts (Count I). Plaintiffs claim that Hatfield violated those provisions by creating false and defective service return affidavits (Count II). Plaintiff Convy claims that Hatfield violated § 486.250 & 486.275 R.S.Mo. because its employee, notary Lorri Lane, did not personally witness James Donahue's signature on the return copy of the summons for Convy, was not physically present when the signature of Donahue was made, and did not sign the service return for Convy herself (Count III).

## II.     Legal Standard

Defendants have filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint so as to eliminate those actions which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity.  *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (quoting *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)).  A complaint must be dismissed for failure to state a claim if it does not plead enough facts to state a claim to relief that is plausible on its face.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 560 (2007) (abrogating the traditional "no set of facts" standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  A petitioner need not provide specific facts to support his allegations, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam), but "must include sufficient factual information to provide the grounds on which the claim rests, and to raise a right to relief above a speculative level."  *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008), *cert. denied*, 129 S.Ct. 222 (2008) (quoting *Twombly*, 550 U.S. at 555-56 & n.3).

In ruling on a motion to dismiss, a court must view the allegations of the complaint in the light most favorable to the petitioner. *Scheuer v. Rhodes*, 416 U.S. 232 (1974); *Kottschade v. City of Rochester*, 319 F.3d 1038, 1040 (8th Cir. 2003).  Although a complaint challenged by a Rule 12(b)(6) motion does not need detailed factual allegations, a petitioner must still provide the grounds for relief, and neither "labels and conclusions" nor "a formulaic recitation of the elements of a cause of action" will suffice.  *Twombly*, 550 U.S. at 555 (internal citations omitted).  "To survive a motion to dismiss, a claim must be facially plausible, meaning that the factual content . . . allows the court to draw the reasonable inference that the respondent is liable

for the misconduct alleged." *Cole v. Homier Dist. Co., Inc*., 599 F.3d 856, 861 (8th Cir. 2010)

(quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)). When determining the facial

plausibility of a claim, the Court must "accept the allegations contained in the complaint as true

and draw all reasonable inferences in favor of the nonmoving party." *Id*. (quoting *Coons v.*

*Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005)). Finally, where a court can infer from those factual

allegations no more than a "mere possibility of misconduct," the complaint must be dismissed.

*Id*. (quoting *Iqbal*, 129 S.Ct. at 1950).

## III.    Discussion

The FDCPA applies to "debt collectors." A debt collector is anybody who "regularly

collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed to

another.' 15 U.S.C. § 1692a(6). "Debt collectors" are prohibited "from making false or

misleading representations and from engaging in various abusive and unfair practices." *Heintz v.*

*Jenkins*, 514 U.S. 291, 292 (1995). Specifically, debt collectors may not (1) engage in "any

conduct the natural consequence of which is to harass, oppress, or abuse any person," 15 U.S.C.

§ 1692d, (2) make a "false, deceptive, or misleading representation," 15 U.S.C. § 1692e, (3) use

"unfair or unconscionable means" to attempt to collect a debt, 15 U.S.C. § 1692f, (4) falsely

represent "the character, amount, or legal status of any debt," or (5) use deceptive means "to

collect or attempt to collect any debt," 15 U.S.C. § 1692e(2)(A), (10). *See Sykes v. Mel Harris &*

*Assocs., LLC*, 757 F. Supp. 2d 413, 420-21 (S.D.N.Y. 2010).

Here, plaintiffs' claims are related to conduct commonly known as "sewer service,"

which is "the practice of failing to serve a summons and complaint and then filing a fraudulent

affidavit attesting to service." 757 F. Supp. 2d at 418. The scheme is employed by unscrupulous

debt collectors in order to obtain default judgment against debtors who fail to appear in court

because they did not have notice of the law suit.  *See, e.g.*, *id.*  Defendants argue that the complaint does not include perjured affidavit allegations, and thus they argue that the allegations do not meet the definition of sewer service.  Defendants are incorrect: plaintiffs repeatedly allege that the service returns were "false" and that the returns "falsely represented" that the plaintiff had been served with process in the state court cases.  (Am. Cmplt. ¶¶ 19; *see also id.* ¶ 38).

Defendants filed a joint motion to dismiss each of the three counts against them.  Each count is discussed in turn below.

### A.    Count I against Litow & Pech

Plaintiffs' Count I is against Litow & Pech for the law firm's alleged violations of the FDCPA.  Plaintiffs allege that the law firm "presented numerous false and defective affidavits to courts throughout the State of Missouri, falsely represented to the courts and defendants that personal jurisdiction had been acquired over defendants, and regularly obtained judgments against and payment from Missouri consumers using such false and defective affidavits."  Am. Cmplt. ¶ 54.  Plaintiffs also allege that Hatfield, in preparing the false and defective affidavits, acted at the request of Litow & Pech.   *Id.* ¶ 53.[2]

Litow & Pech does not appear to contest its status as a "debt collector" under the statute. Rather, the law firm contends that it cannot be held liable for Hatfield's conduct because plaintiffs' allegations do not support vicarious liability.  The Court agrees that, although plaintiffs have attempted to plead Hatfield is an agent or employee of Litow & Pech, plaintiffs have not sufficiently alleged that Litow & Pech is vicariously liable for Hatfield's acts.

---

[2]The Amended Complaint contains two paragraphs numbered 53.  This citation refers to the second ¶ 53.

Section 220 of the Restatement sets forth the following factors to assist in "determining whether one acting for another is a servant or independent contractor":

(a) the extent of control which, by the agreement, the master may exercise over the details of the work;
(b) whether or not the one employed is engaged in a distinct occupation or business;
(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
(d) the skill required in the particular occupation;
(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
(f) the length of time for which the person is employed;
(g) the method of payment, whether by the time or by the job;
(h) whether or not the work is a part of the regular business of the employer;
(i) whether or not the parties believe they are creating the relation of master and servant; and
(j) whether the principal is or is not in business.

*Bargfrede v. American Income Life Ins. Co.*, 21 S.W.3d 157, 162 (Mo. Ct. App. 2000). Although plaintiffs allege that Litow & Pech chose which assignments each process server agent would receive, required personal performance of the tasks assigned, required detailed reporting of service attempts, required Hatfield to maintain liability insurance, and assisted and directed Hatfield in preparing and completing service returns, those allegations do not suffice to support vicarious liability. As defendants point out, plaintiffs themselves allege that Hatfield serves other law firms as well as Litow & Pech. Further, even if Litow & Pech does dole out process server assignments and requires personal performance, that does not amount to controlling the "details" of the work. Finally, reporting and filing requirements that are part of the business of being an independent process server do not transform an independent contractor into an agent or employee. Plaintiffs therefore have not pleaded enough facts to state a vicarious liability-based claim that is plausible on its face. *See Twombly*, 550 U.S. at 560.

Furthermore, and tellingly, plaintiffs appear to have abandoned the vicarious liability claim because they do not address it at all in their memorandum. Rather, plaintiffs focus squarely on their allegations that seek to hold the law firm liable for its own acts — not just those of Hatfield. *See* Am. Cmplt. ¶¶ 53-54. Indeed, plaintiffs have sufficiently alleged Litow & Pech's independent liability, which Litow & Pech similarly does not contest in its reply memorandum. Plaintiffs allege that Litow & Pech "request[ed]" from Hatfield and "presented" to the state court the "false" affidavits. *Id.* ¶¶ 53-54. As a result, Count I stands as to the question of Litow & Pech's independent liability only.

### B.    Count II against Hatfield

Plaintiffs' Count II is against Hatfield for preparing fraudulent service return affidavits. Hatfield argues that it cannot be held liable for any wrongdoing alleged in the complaint because it falls under the "process server" exception set forth in 15 U.S.C. § 1692a(6)(D). The "debt collector" definition does not include "any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt." 15 U.S.C. § 1692a(6)(D). Hatfield cites *Worch v. Wolpoff & Abramson, LLP*, 477 F. Supp. 2d 1020, 1024-25 (E.D. Mo. 2007), which involved allegations against a process server for his "aggressive" service of an arbitration claim notice. Plaintiffs insist their claim against Hatfield is different from that in *Worch* and not subject to the process server exception. Plaintiffs instead allege that Hatfield falsely executed and filed service returns with the state court. Unlike in *Worch*, the allegations here do not involve conduct "while serving or attempting to serve legal process." It does not appear that any Eighth Circuit court has addressed this matter. However, other courts have drawn the distinction plaintiff asserts, which is supported by the language of the statute itself. Although it is true that "process servers whose involvement is merely 'limited to serving

the [debt collection] communication on the consumer—in effect, to being messengers'—are exempt, ... a process server who goes 'beyond being merely being a messenger ... and engages in prohibited abusive or harassing activities to force an individual to repay a debt' cannot claim the exemption's protections." *Sykes,* 757 F. Supp. 2d at 423 (quoting and citing Romea v. Heiberger & Assocs., 163 F.3d 111, 117 (2d Cir. 1998); *Flamm v. Sarner & Assoc. P.C.*, No. 02 Civ. 4302(LAR), 2002 WL 31618443, at *5 (E.D. Pa. Nov. 6, 2002); *McNall v. Credit Bureau of Josephine County*, 689 F. Supp. 2d 1265, 1277–78 (D. Or. 2010)).   Because the FDCPA protects process servers only "while" they serve process, this Court agrees that Hatfield's alleged fraudulent service and creation of defective affidavits remove them from the "process server" exception.  *See*, *e.g.*, *Sykes,* 757 F. Supp. 2d at 423.

### C.      Count III against Hatfield

Plaintiff Convy alone brings Count III, which claims Hatfield violated § 486.250 & 486.275 R.S.Mo. because Hatfield's employee, notary Lorri Lane, did not personally witness James Donahue's signature on the return copy of the summons for Convy, was not physically present when the signature of Donahue was made, and did not sign the service return for Convy herself.

Hatfield moves to dismiss this count because, it argues, the summons was already stale when it was allegedly served, thus, Hatfield contends, any other actions involved in preparing the return of service have no causal connection to plaintiff's alleged damages.  Hatfield asks this Court to consider documents not attached or otherwise incorporated by the Complaint, including a Motion to Set Aside Default Judgment, which states that the summons was expired when served and that the "expiration of the summons is one of many defects with the service return," and the Order setting aside the default.  This Court's review, however, is limited to the complaint

itself, and Hatfield does not explain on what basis the Court may consider those extrinsic, unauthenticated documents. *See Brookes v. Midwest Heart Group*, 655 F.3d 796, 800 (8th Cir. 2011).[3]  In addition, Missouri law does not require that a notary's misconduct be the sole cause of damage in order for that misconduct to be actionable. § 486.365 R.S.Mo. ("It is not essential to a recovery of damages that a notary's official misconduct be the only proximate cause of the damages.").  The motion to dismiss Count III will be denied.

## IV.  Conclusion

The defendants' motions to dismiss will be denied in part and granted in part. Defendants' first motion to dismiss (#4) is denied as moot because it pertains to the now-replaced first complaint.  Defendants' second motion to dismiss (#17) is denied as to Counts II and III and as to defendant Litow & Pech's independent liability under Count I.  The second motion to dismiss is granted only on Litow & Pech's vicarious liability under Count I.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion to dismiss (#4) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that defendants' motion to dismiss (#17) is **DENIED** in part and **GRANTED** in part, as explained herein.

Dated this ___18th___ day of March, 2013.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE

---

[3]Even if Hatfield had explained that the Court could consider the extrinsic, unauthenticated materials as public records, *see Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007), the Motion to Set Aside Default itself states that there were "many defects with the service return," of which the alleged expiration is one.  In addition, Hatfield's argument that the default judgment was eventually set aside does not necessarily mean that Convy was not damaged.